IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-CR-00112-GKF-3 |
| | ) |
| ULYSSES SEMION WASHINGTON, | ) |
| a/k/a "Jaccpot," | ) |
| a/k/a "Jack Pot," | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion *in Limine* [Doc. 72] of defendant Ulysses Semion Washington and the Notice of Intent to Offer Evidence as Inextricably Intertwined or Pursuant to Rule 404(b) [Doc. 61] of plaintiff United States of America. For the reasons set forth below, the motion *in limine* is denied.

**I.    Background/Procedural History**

On March 24, 2022, U.S. Magistrate Judge Jodi F. Jayne approved a Criminal Complaint against Derius Donovan Ledet, which alleged that Mr. Ledet committed Carjacking under 18 U.S.C. § 2119(1). The Affidavit in Support of Arrest Warrant included assertions that, on March 22, 2022, Christian Waffle was attending his niece's birthday party at Ashlyn Waffle's residence. Mr. Ledet was also in attendance. Mr. Ledet allegedly began acting belligerently and Mr. Waffle offered to give Mr. Ledet a ride to an apartment complex near River Spirit Casino. Upon arrival at the apartment complex, Mr. Ledet saw a police officer and "freaked out." Mr. Ledet allegedly pulled a revolver on Mr. Waffle and ordered him to drive. Mr. Ledet forced Mr. Waffle to drive to the Best Western Inn at 10143 E. 62nd Street in Tulsa. Mr. Ledet then ordered Mr. Waffle to get out of the vehicle and hand over his wallet and two cell phones. Mr. Ledet left the scene in Mr. Waffle's vehicle.

On April 19, 2022, a grand jury returned an Indictment charging Mr. Ledet with one count of Felon in Possession of a Firearm and Ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [Doc. 15]. Mr. Ledet was arraigned on the Indictment by video before U.S. Magistrate Judge Christine D. Little on April 20, 2022. [Doc. 19].

On May 16, 2022, a grand jury returned a Superseding Indictment in this case. In addition to Count One against Mr. Ledet, the Superseding Indictment includes the following charges: Count Two – Conspiracy to Tamper with a Witness, Victim, and Informant by Corrupt Persuasion pursuant to 18 U.S.C. §§ 1512(k), 1512(h), and 1512(b) against Mr. Ledet, Mr. Washington, and co-defendant Tiffany Marie Brown; Count Three – Tampering with a Witness, Victim, and Informant by Corrupt Persuasion pursuant to 18 U.S.C. §§ 1512(b)(1), 1512(h), and 2 against Ms. Ledet, Mr. Washington, and Ms. Brown; and Count Four – Tampering with a Witness, Victim, and Informant by Corrupt Persuasion pursuant to 18 U.S.C. §§ 1503(a), 1503(b)(3), and 2 against Mr. Ledet, Mr. Washington, and Ms. Brown. [Doc. 22]. The court set this matter for trial on July 18, 2022. [Doc. 33; Doc. 46].

On July 8, 2022, Mr. Ledet pled guilty to Count Three – Tampering with a Witness, Victim, and Informant by Corrupt Persuasion pursuant to 18 U.S.C. §§ 1512(b)(1), 1512(h), and 2. [Doc. 53; Doc. 56; Doc. 57]. On July 15, 2022, the court granted the government's motion to dismiss the Superseding Indictment as to Tiffany Marie Brown. [Doc. 67].

Mr. Washington has elected to proceed to trial. [Doc. 59]. On July 14, 2022, the government filed its Notice of Intent to Offer Evidence as Inextricably Intertwined or Pursuant Rule 404(b). [Doc. 61]. The court directed Mr. Washington to file any objections to the evidence set forth in the government's Notice on or before noon on Monday, July 18, 2022. [Doc. 62]. Rather than filing objections, Mr. Washington filed the motion *in limine* requesting that the court exclude the 404(b) evidence included in the government's Notice, as well as "transcripts from various audio recordings of Defendant's calls from the Tulsa County Jail." [Doc. 72, p. 1]. Because Mr. Washington's motion

seeks to exclude the evidence at issue in the government's Rule 404(b) Notice, the court construes the motion *in limine* as Mr. Washington's objections to the government's Rule 404(b) Notice.

**II.     Standard**

Pursuant to Federal Rule Evidence 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

To determine whether evidence is properly admitted under Rule 404(b), the court must apply a four-part test:

(1)     The evidence must be offered for a *proper purpose* under Rule 404(b);

(2)     The evidence must be *relevant* under Rule 401;

(3)     The *probative value* of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and

(4)     The district court, upon request, must have *instructed the jury* pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

*United States v. Henthorn*, 864 F.3d 1241, 1247-48 (10th Cir. 2017) (emphasis in original) (citing *Huddleston v. United States,* 485 U.S. 681 (1988)). "[T]he government must precisely articulate the purpose of the proffered [404(b)] evidence." *United States v. Kearn*, 863 F.3d 1299, 1309 (10th Cir. 2017).

The Tenth Circuit has characterized Rule 404(b) as "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (emphasis in original) (quoting *United States v. Van Metre,* 150 F.3d 339, 349 (4th Cir. 1998)). Thus, if evidence is offered for a proper purpose under Rule 404(b), it may be excluded *only* under Rule 403. *Id.; see also United States v. Merritt*, 961 F.3d 1105, 1112

3

(10th Cir. 2020) (emphasis in original).

Rule 404(b) does not apply to "intrinsic"—or *res gestae*—evidence.[1] *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015). Evidence is intrinsic "when it is 'directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.'" *Id.* (quoting *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009)). Thus, the Tenth Circuit has characterized evidence as intrinsic when it is "inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act" or it is "part and parcel of the proof of the offense charged in the indictment." *Ford*, 613 F.3d at 1267 (quotations and citations omitted).

**III.   Analysis**

In the Notice, the government identifies two categories of "other act" evidence it intends to admit during trial. *First,* the government expresses its intent to offer testimony from Mr. Ledet that he and Mr. Washington were previously charged in Tulsa County District Court Case No. CF-2020-5667 with Feloniously Pointing a Weapon, First Degree Burglary, and Assault and Battery with a Dangerous Weapon. The state-court charges related to an October 26, 2020 incident wherein Mr. Washington and Mr. Ledet allegedly ransacked Carrie Frierson's home. The government states that Mr. Ledet will testify that, while in custody awaiting trial, Mr. Ledet and Mr. Washington agreed that Mr. Washington would persuade Ms. Frierson to draft an affidavit stating that Mr. Ledet and Mr. Washington were not responsible for the incident and that she would not testify. Ms. Frierson subsequently failed to appear at the preliminary hearing scheduled in Tulsa County District Court, and the state court charges against Mr. Ledet and Mr. Washington were dropped.

*Second*, the government provided notice of its intent to introduce evidence of a telephone call

---

[1] Intrinsic evidence is subject to the balancing test set forth in Federal Rule of Evidence 403. *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010).

made by Mr. Washington on July 5, 2022 while detained in the Tulsa County Jail to an unidentified party. During the call, Mr. Washington asks the unidentified party for Ms. Waffle's phone number because he "need[s] to make sure she doesn't go to court." [Doc. 61, p. 7].

The court first considers evidence of the prior incident involving Ms. Frierson.

A. *Evidence of Incident Involving Ms. Frierson*

The government does not contend that the prior incident involving Ms. Frierson is intrinsic, or *res gestae*, to the crimes charged. *See generally* [Doc. 61]. Accordingly, the court considers only whether the evidence is properly admitted extrinsic evidence under Rule 404(b).

1. Proper Purpose

The government argues that the evidence is properly offered to demonstrate intent and "knowledge of the plan to tamper with witnesses in the instant case." [Doc. 61, p. 4]. The government explains that, during a jailhouse call, Mr. Ledet stated: "tell Jackpot that . . . me and him will pay them to write affidavits **like Carrie did** so they can let me out." [*Id.* (emphasis added)]. The government contends that evidence of the prior incident involving Ms. Frierson will tend to show that Mr. Washington understood and agreed to Mr. Ledet's plan to pay Ashlyn and Christian Waffle to not testify for the government. [*Id.*].

The Tenth Circuit "has repeatedly held that evidence of past crimes is admissible to establish specific intent." *United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005); *see also United States v. Watson*, 766 F.3d 1219, 1237 (10th Cir. 2014) (collecting cases). Count Two—Conspiracy to Tamper with a Witness, Victim, and Informant by Corrupt Persuasion—requires the government to prove that Mr. Washington "'knowingly' conspired to use intimidation, threats, or corrupt persuasion 'with intent to . . . influence, delay, or prevent the testimony of [another] person in an official proceeding.'" *United States v. Sutton*, 30 F.4th 981, 984 (10th Cir. 2022) (quoting 18 U.S.C. § 1512(b)(1)). Likewise, Count Three—Tampering with a Witness, Victim, and Informant by Corrupt Persuasion—requires that the

5

defendant act with the intent to "influence, delay, or prevent" a witnesses' testimony in an official proceeding. *United States v. Sparks*, 791 F.3d 1188, 1190 (10th Cir. 2015). Thus, the evidence is offered for a proper purpose and the first *Huddleston* factor is satisfied.

    2.    Relevance

"Evidence is relevant if: (1) 'it has any tendency to make a fact more or less probable than it would be without the evidence'; and (2) 'the fact is of consequence in determining the action.'" *Henthorn*, 864 F.3d at 1249 (quoting Fed. R. Evid. 401). "The lynchpin of *Huddleston* relevance is similarity." *Henthorn,* 864 F.3d at 1249 (quoting *Brooks,* 736 F.3d at 940).

Evidence of the 2020 incident involving Ms. Frierson is relevant to Mr. Washington's intent and knowledge of the charged conduct in this matter. The incident involving Ms. Frierson occurred less than two years ago. Further, the incidents are sufficiently similar because both involve Mr. Washington allegedly paying a government witness not to testify. Thus, the 2020 incident tends to show that Mr. Washington knowingly and intentionally acted to prevent the testimony of another person in an official proceeding[2]. Thus, the second *Huddleston* factor is satisfied.

    3.    Probative Value versus Unfair Prejudice

If the evidence is relevant, the court must then determine whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice under Rule 403. *Henthorn*, 864 F.3d at 1247-48. "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude

---

[2] Further, although not argued by the government, the evidence is intrinsic insofar as it provides context and background to Mr. Ledet's statement during a jail call, "tell Jackpot that . . . me and him will pay them to write affidavits like Carrie did so they can let me out." This is because the Tenth Circuit has characterized evidence as intrinsic when it is "inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act" or it is "part and parcel of the proof of the offense charged in the indictment." *Ford*, 613 F.3d at 1267 (quotations and citations omitted).

toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Id.* at 1256 (emphasis in original) (quoting *United States v. MacKay,* 715 F.3d 807, 840 (10th Cir. 2013)). "[E]xclusion of evidence under Rule 403 [is] 'an extraordinary remedy' that 'should be used sparingly.'" *Merritt,* 961 F.3d at 1115 (quoting *Brooks*, 736 F.3d at 940).

      Mr. Washington contends that a "great risk" of unfair prejudice exists because evidence of the 2020 incident is likely to "confuse the jury of the issues and the standard under which it may consider this alleged evidence, and would likely result in the jury inferring criminal propensity." [Doc. 72, p. 4]. However, any concern that the jury may be confused regarding the standard under which it may consider the other act evidence may be mitigated through a limiting instruction. Further, other act evidence "must [not] be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to 'another [proper] purpose' is established *only* through the forbidden propensity inference." *Henthorn*, 864 F.3d at 1252 (emphasis in original).

      As previously stated, evidence of the 2020 incident is relevant to another proper purpose—Mr. Washington's knowledge and intent. Further, although the evidence could result in prejudice to Mr. Washington, the potential for unfair prejudice does not "substantially outweigh" the probative value of the evidence. *See* Fed. R. Evid. 403. The evidence is strongly probative of Mr. Washington's intent. Moreover, the court is mindful that exclusion under Rule 403 is an "extraordinary remedy" that "should be used sparingly." *See Merritt,* 961 F.3d at 1115.

      However, although *some* evidence of the 2020 incident is probative and not unduly prejudicial, that is not to say that *all* evidence of the prior incident is admissible under Rule 404(b) and Rule 403. The Tenth Circuit has recognized that a district court may "carr[y] too far" the admission of other act evidence. *See United States v. Sarracino*, 131 F.3d 943, 949 (10th Cir. 1997). The court concludes that some evidence regarding the 2020 incident exceeds the bounds of permissible evidence under Rule 404(b). Thus, the government will not be permitted to offer evidence of the details of the alleged

7

conduct underlying the charges in Tulsa County District Court Case No. CF-2020-5667—that is, that Mr. Washington and Mr. Ledet allegedly kicked in Ms. Frierson's apartment door and ransacked her home, and that Mr. Washington hit Ms. Frierson with the stock of a rifle. The government may offer evidence only that Mr. Washington and Mr. Ledet faced felony charges in Tulsa County District Court. Further, although the government may offer evidence that Ms. Frierson failed to appear in state court, it may not offer or solicit any testimony or submit evidence that the State of Oklahoma dropped all charges against Mr. Washington and Mr. Ledet. Finally, counsel for the government is cautioned that the court will permit only a limited inquiry regarding the 2020 incident and will not permit a "second trial" regarding Mr. Washington's alleged conduct toward Ms. Frierson. If necessary, the court will provide further guidance outside of the hearing of the jury prior to Mr. Ledet's testimony.

    4.  <u>Limiting Instruction</u>

"[A] limiting instruction cautions the jury that the Rule 404(b) evidence should be considered only for the purposes for which it was admitted and not as evidence of the defendant's character or propensity to commit an offense." *Henthorn*, 864 F.3d at 1257 (quoting *United States v. Davis*, 636 F.3d 1281, 1299 (10th Cir. 2011)). The court will give a limiting instruction that cautions the jury to consider the evidence about the 2020 incident "for the purposes for which it was admitted (knowledge and intent) and not as evidence of [] defendant's character or propensity to commit an offense." *Id.*

  B.  *Evidence of Subsequent July 5 Jail Call*

The government also expresses its intent to introduce evidence of a telephone call made by Mr. Washington on July 5, 2022, while detained. As previously stated, during the call, Mr. Washington asks an unidentified party for Ashlyn Waffle's number because he "need[ed] to make sure she don't go to court." The telephone call occurred subsequent to the crimes charged in the Superseding Indictment.

"Rule 404(b), by its very terms, does not distinguish between 'prior' and 'subsequent' acts." *Merritt*, 961 F.3d at 1117. Thus, "[e]vidence admitted under Rule 404(b) may relate to conduct

occurring either *before or after* the charged offense." *Davis*, 636 F.3d at 1298 (emphasis in original). And the Tenth Circuit has "consistently 'recognized the probative value of uncharged acts to show motive, intent, and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time.'" *Id.* (quoting *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)). To assess similarity, the Tenth Circuit has identified several non-exclusive factors to consider: "(1) whether the acts occurred closely in time; (2) geographical proximity; (3) whether the charged offense and the other acts share similar physical elements; and (4) whether the charged offense and the other acts are part of a common scheme." *Davis,* 636 F.3d at 1298 (quoting *United States v. Mares*, 441 F.3d 1152, 1158 (10th Cir. 2006)).

The July 5 telephone call occurred within three months of the charged conduct and in the same geographic location (Tulsa). In both the charged offense and the July 5 call, Mr. Washington did, or attempted to, prevent Ms. Waffle from testifying regarding these federal proceedings. Thus, the July 5 telephone call is sufficiently similar to the charged crime. Further, the subsequent call is relevant to Mr. Washington's intent and knowledge.

Mr. Washington argues that the July 5 telephone call must be excluded pursuant to Rule 403 because its probative value is substantially outweighed by the danger of needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. The Tenth Circuit has defined cumulative evidence as "evidence which goes to prove what has already been established by other evidence." *United States v. Otuonye*, 995 F.3d 1191, 1208 (10th Cir. 2021). The Tenth Circuit has suggested that, if the witnesses' testimonies are not "a total repeat" of each other, and the witnesses provide more detail or discuss topics not raised by the other, the testimony is not cumulative. *See United States v. Archuleta*, 737 F.3d 1287, 1292-93 (10th Cir. 2013). The July 5 telephone call is not cumulative as it provides additional detail regarding Mr. Washington's intent and, as a separate call, is not a "total repeat" of

evidence of other jailhouse calls. Accordingly, the probative value of the evidence is not substantially outweighed by the dangers of wasting time or needlessly presenting cumulative evidence. Finally, as stated above, the court intends to provide a limiting instruction that cautions the jury to consider the evidence about the July 5 telephone call for the purposes for which it was admitted and not as evidence of Mr. Washington's character or propensity to commit the crimes charged.

### C. Transcripts of Audio Recordings of Jail Calls

Although not explicitly part of the government's Rule 404(b) Notice, in the Motion *in Limine*, Mr. Washington asks the court to exclude the transcripts of audio recordings of jailhouse telephone calls. Mr. Washington contends that "introduction of the transcripts would be in violation of Federal Rule of Evidence 403 as it would be needlessly presenting cumulative evidence and would result in wasted time." [Doc. 72, p. 6]. However, nothing in the government's Trial Brief indicates that the government intends to introduce the transcripts as exhibits. Nor would admission of the transcripts be proper. Rather, the transcripts will be provided as demonstrative aids and will not be sent back with the jury for use during deliberations. Moreover, the court intends to provide a limiting instruction directing the jury that the recordings themselves are the evidence, not the transcripts, and, further, that the jurors must rely on what they hear, not what they read. Accordingly, Mr. Washington's motion *in limine* in this regard is denied.

### IV. Conclusion

WHEREFORE, the Motion *in Limine* [Doc. 72] of defendant Ulysses Semion Washington is denied.

IT IS SO ORDERED this 19th day of July, 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE